IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CLEVELAND LEE WRIGHT,
a/k/a Maiakhen Asar Maakheru
ADC #119139                                                                                    PLAINTIFF

v.                                              4:21-cv-00069-KGB-JJV

SONDRA L. PARKER,
Mental Health Supervisor, Varner Unit, ADC; *et al.*                          DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge

Kristine G. Baker.   Any party may serve and file written objections to this recommendation.

Objections should be specific and include the factual or legal basis for the objection.   If the

objection is to a factual finding, specifically identify that finding and the evidence that supports

your objection.   Your objections must be received in the office of the United States District Court

Clerk no later than fourteen (14) days from the date of this recommendation.    Failure to file timely

objections may result in a waiver of the right to appeal questions of fact.

**DISPOSITION**

I.      **INTRODUCTION**

Cleveland Lee Wright ("Plaintiff") is a transgender prisoner in Varner Super Max Unit of

the Arkansas Division of Correction ("ADC").   She has filed a *pro se* Amended Complaint,

pursuant to 42 U.S.C. § 1983, alleging Defendants ADC Deputy Director of Health Rory Griffin,

Warden James Shipman, Warden James Gibson, Mental Health Administrator Robert A. Parker,

Executive Assistant Vickey Haycox, and Jada Lawrence violated her Eighth Amendment rights

by refusing to give her sex reassignment surgery, electrolysis, gender affirming clothing,

1

cosmetics, and a transfer to a female unit.[1]   (Doc. 4.)   Plaintiff brings these claims against

Defendants in their official and individual capacities.   (*Id*.)   And she seek damages as well as

injunctive relief.   (*Id*.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to

judgment as a matter of law.   (Docs. 30-32.)   Plaintiff has not filed a Response, and the time to

do so has expired.   After careful consideration and for the following reasons, I recommend the

Motion be GRANTED; Plaintiff's claims against Defendants Griffin, Shipman, Gibson, Parker,

Haycox, and Lawrence be DISMISSED with prejudice; and this case be CLOSED.

## II.   SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if

the pleadings, depositions, answers to interrogatories and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law.   Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477

U.S. 317, 321 (1986).   When ruling on a motion for summary judgment, the court must view the

evidence in a light most favorable to the nonmoving party.   *Naucke v. City of Park Hills*, 284

F.3d 923, 927 (8th Cir. 2002).   The nonmoving party may not rely on allegations or denials but

must demonstrate the existence of specific facts that create a genuine issue for trial.   *Mann v.*

*Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).   The nonmoving party's allegations must be supported

by sufficient probative evidence that would permit a finding in his favor on more than mere

speculation, conjecture, or fantasy.   *Id.* (citations omitted).   A dispute is genuine if the evidence

is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if

---

[1] On March 3, 2021, I entered a Partial Recommended Disposition suggesting Plaintiff's claims against Defendants Parker, Compton, and Reed be dismissed without prejudice pursuant to screening mandated by 28 U.S.C. § 1915A.   (Doc. 6.)   That recommendation is still pending.

its resolution affects the outcome of the case.    *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).    Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.    *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

III.    **FACTS**

The undisputed facts, taken largely from Defendants' Statement of Facts (Doc. 31) and Plaintiff's deposition (Doc. 30-1), are as follows.[2]    Plaintiff, who is forty-one years old, was born male but identifies as female.  (Doc. 30-1 at 22; Doc. 31.)    In 2010, which was before her incarceration, Plaintiff began taking hormones purchased on the black market which helped her develop breast tissue, and she had permanent cosmetics applied to her eyes and eyebrows.    (Doc. 30-1 at 13, 41; Doc. 31.)    Plaintiff did not explore sex reassignment surgery ("SRS") prior to her incarceration because she could not afford it. (Doc. 30-1 at 23.)

Plaintiff entered the ADC in 2014 and was assigned to a male unit.    (Doc. 30-1 at 10.) In 2016, prison doctors diagnosed Plaintiff with gender dysphoria and prescribed female hormones and a testosterone blocker, which she continues to take.    (Doc. 30-1 at 2-7, 13-33; Doc. 31.) Plaintiff receives mental health counseling at her cell monthly, visits with an APRN every three months for psychotherapy, and mood stabilizing medication.    (*Id.*)    During her deposition, Plaintiff said she was satisfied with her hormone and mental health therapies.    (Doc. 30-1 at 20-

---

[2]  Because Plaintiff did not file a Response, the facts in Defendants' Statement of Facts (Docs. 31) are deemed admitted.    *See* Local Rule 56.1(c) ("All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party"); *Jackson v. Ark. Dep't of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001) (pursuant to Local Rule 56.1(c), a plaintiff who failed to respond to the motion for summary judgment "forfeited her ability to contest the facts presented" by the defendant).

33.)

In October of 2019 and on one other occasion, Plaintiff met with the ADC's Gender Dysphoria Management and Treatment Committee ("GDMTC") to request SRS.[3]  (Doc. 30-1 at 27-30, 67-69; Doc. 31.)   The GDMTC denied her requests because SRS had not been deemed necessary by a medical professional.  (*Id*.)   In 2021, Plaintiff cut her scrotum in an attempt to remove her testicles.  (Doc. 30-1 at 22-23.)   During her deposition, Plaintiff said she did so because she wishes to be a female anatomically and not because she is suicidal.  (*Id*.)

Plaintiff currently lives in a single-person cell at the VSM, which is a male facility and wants to be transferred to the McPherson Unit, which is a female facility.  (Doc. 30-1 at 36-39; Doc. 31.)   The ADC provides her with a standard male uniform, boxer shorts, and four sports bras. (Doc. 30-1 at 7, 31-37; Doc. 31.)   Plaintiff wants to wear female underwear and supplement her permanent cosmetics with lipstick and other make-up, but they are not provided to her or available for purchase at the commissary.  (*Id*.)   Plaintiff also seeks electrolysis.  (*Id*.)   But she admitted during her deposition that she is able to remove body hair with a dilatory she purchases from the commissary.[4]  (*Id*.)

IV.    DISCUSSION

A.    No Personal Involvement

Defendants Jada Lawrence and Vicky Haycox, who are the ADC Director's executive assistances, argue they should be dismissed without prejudice because they were not personally involved in the alleged constitutional violations.   I agree.   Vicarious liability does not apply in §

---

[3]  Plaintiff does not remember the date of the other meeting. (Doc. 30-1 at 27-30.)

[4]  Prisoners at the VSM cannot have razors, for safety reasons, because they are in restrictive housing.   (Doc. 30-1 at 33-34.)

1983 actions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Parrish v. Ball*, 594 F.3d 993, 1001

(8th Cir. 2010).   Instead, to be held liable there must be evidence that "each Government-official

defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556

U.S. at 676.

During her deposition, Plaintiff explained Defendants Lawrence and Haycox sent her

letters communicating the ADC Director's response to her requests for sexual reassignment

surgery, female undergarments, and other matters.  (*Id*.)   And, she admitted there was "nothing

they could do" about her requests, other than telling her what the Director had decided.  (*Id*. at

46.)   Because the undisputed evidence establishes Defendants Lawrence and Haycox did not

personally participate in the decisions regarding Plaintiff's confinement, they are entitled to

summary judgment on all claims.[5]  *See Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir.

2007) (granting summary judgment to defendants who "had only minimal personal involvement"

in the alleged constitutional violation); *Butterfield v. Young*, No. 19-2371, 2021 WL 71449 (8th

Cir. Jan. 8, 2021) (dismissing a §1983 claim against a defendant who played no role in denying

medical care for gender dysphoria).

   **B.     Sovereign Immunity**

Defendants Griffin, Shipman, Gibson, Parker, and Reed argue they are entitled to sovereign

immunity from the claims raised against them in their official capacities.   The doctrine of

sovereign immunity, which is derived from the Eleventh Amendment, precludes the recovery of

monetary damages from state officials acting in their official capacities, unless the state has waived

its immunity.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989*)*; *Kruger v. Nebraska*,

---

[5] In contrast, Defendants Parker, Shipman, Gibson, and Griffin were either members of the
GDMTC or directly responded to Plaintiff's requests.   (Doc. 30-1 at 43-47.)

820 F.3d 295, 301(8th Cir. 2016).    The parties agree Defendants are state officials.    And, the State of Arkansas has not waived its Eleventh Amendment immunity.    *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991).    Thus, Defendants are entitled to sovereign immunity from Plaintiff's request for monetary damages against them in their official capacities.    However, sovereign immunity does <u>not</u> bar Plaintiff's request for monetary damages from Defendants in their individual capacities or her request for prospective injunctive relief.    *Larson v. Kempker,* 414 F.3d 936, 939-40 (8th Cir. 2005); *Murphy v. Arkansas* 127 F.3d 750, 754 (8th Cir. 1997).

### C.    Qualified Immunity & Injunctive Relief

Defendants Griffin, Shipman, Gibson, Parker, and Reed say they are entitled to qualified immunity from the claims raised against them in their individual capacities.    Qualified immunity, which applies only to monetary damages, protects government officials from § 1983 liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."    *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021).    Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide.    *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019).

Defendants are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to the Plaintiff, does not establish a violation of her Eighth Amendment rights; <u>or</u> (2) the constitutional right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful.    *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021).    Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson* 555 U.S. at 236;

*Mogard v. City of Milbank*, 932 F.3d 1184, 1188 (8th Cir. 2019).

The short answer here is that Defendants are entitled to qualified immunity under prong two because the law on this matter is evolving and far from clearly established.[6]  *See* Marjorie A. Shields, Annotation, *Provisions of Hormone Therapy or Sexual Reassignment Surgery or State Inmates with Gender Identity Disorder (GID)*, 89 A.L.R.6th 701 (2013); Bryce Couch, *The Constitutional Basis for Inmate Gender Confirmation Surgery*, 74 SMU L. Rev. 783 (2021). However, qualified immunity does not apply to Plaintiff's request for prospective injunctive relief, which is the heart of what she seeks in this case.  *See Hamner v. Burls*, 937 F.3d 1171, 1176 (8th Cir. 2019); *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007).   Thus, I will now consider whether there are any genuine issues of material facts as to whether Plaintiff's Eighth Amendment rights have been violated, which is, in essence, the same as prong one of the qualified immunity analysis.

### 1.    Medical Care

"The Eighth Amendment requires state prison officials to provide inmates with needed medical care."  *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016).   To defeat summary judgment and proceed to trial on her Eighth Amendment inadequate medical care claim, Plaintiff must have evidence, viewed in the light most favorable to her, that: (1) she had an objectively serious need for medical care for gender dysphoria; and (2) Defendants subjectively knew of, but deliberately disregarded, that serious medical need.  *See Shipp v. Murphy*, 9 F.4th 694, 703 (8th

---

[6] *Manning v. Ryan*, 13 F.4th 705, 707 (8th Cir. 2021) ("[c]learly established means that, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right," and the "existing precedent must have placed the statutory or constitutional question beyond debate") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020) ("clearly established" law is either a "controlling case or a robust consensus of cases of persuasive authority").

Cir. 2021); *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018).    The Eighth Circuit has recognized

gender dysphoria as an objectively serious medical need.    *Reid v. Griffin*, 808 F.3d 1191, 1192

(8th Cir. 2015); *White v. Farrier*, 849 F.2d 322, 325 (8th Cir. 1988).    Thus, this case turns on the

second element of deliberate indifference, which is a high threshold that goes well beyond

negligence or gross negligence.    *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010).    To

establish deliberate indifference, "there must be actual knowledge of the risk of harm, followed by

deliberate inaction amounting to callousness."    *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir.

1998).

There is no evidence Defendants are denying Plaintiff for treatment for gender dysphoria.

Instead, it is undisputed Plaintiff regularly receives mental health counseling and hormone therapy,

which the Eighth Circuit has held is not, *per se*, constitutionally required.    *Reid,* 808 F.3d at 1192-

93; *White*, 849 F.2d at 325-28; *Long v. Nix*, 86 F.3d 761, 765-66 (8th Cir. 1996).    She also is

allowed to express her femininity by wearing sports bras, styling her hair as she desires, removing

body hair with a dilatory, and wearing permanent cosmetics she obtained prior to incarceration.

*See Long*, 86 F.3d at 763-66 (prison not required to provide "women's clothing and make-up" to

transgender prisoner).    Nothing about these undisputed facts suggests deliberate indifference to

Plaintiff's desire to identify as female.    *See Fourte v. Faulkner Cnty.,* 746 F.3d 384, 390 (8th Cir.

2014) (finding that no deliberate indifference when medical providers "made efforts to cure the

problem in a reasonable and sensible manner").

Plaintiff's main concern is Defendants' denial of her request for SRS.    The ADC's gender

dysphoria policy says that, although "initiation of sexual reassignment is impractical in the

correctional setting," the GDMT may authorize SRS based on a finding of "medical necessity."[7]

---

[7] And, the Directive provides "self-inflicted genital mutilation and other forms of self-mutilation

(Doc. 30-2 at 2-3.)   Thus, the ADC does not ban or prohibit SRS; it requires a medical necessity

for obtaining that care.   Here, it is undisputed that none of the mental health or medical professions

who regularly meet with Plaintiff have determined SRS is medically necessary.   That being said,

I am sympathetic to Plaintiff's sincere desire to further transition to female.   However, prisoners

are not entitled to the medical care of their choosing.   *Barr*, 909 F.3d at 921-22; *Reid*, 808 F.3d at

1192; *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).   Prison medical providers are

free to exercise their independent professional judgment, and Plaintiff's mere disagreement with

the course of provided care is insufficient to sustain a constitutional violation.[8]   *Id.; Long,* 86 F.3d

at 765-66.   Thus, although Plaintiff desires SRS, which is something she admits she was unable

to obtain prior to her incarceration, there is no constitutional requirement that the State provide it

to her while she is in prison absent a finding of medical necessity.   "To survive summary

judgment, [the prisoner] must show grossly incompetent or inadequate care so inappropriate as to

evidence intentional maltreatment or a refusal to provide essential care." *Redmond v. Kosinski*,

999 F.3d 1116, 1120 (8th Cir. 2021).   Because there is no such evidence in the record here, I

conclude Defendants are entitled to summary judgment on this Eighth Amendment claim.

### 2.      Transfer

Although Defendants' Brief (Doc. 32) does not address the issue, Plaintiff also asks to be

transferred to the McPherson Unit which houses female prisoners.   (Doc. 4; Doc. 30-1 at 36-39.)

Although this claim also falls under the Eighth Amendment, the analysis is slightly different.

---

are contraindications for sexual reassignment treatment." (Doc. 30-2 at 2.)

[8] Plaintiff says that the World Professional Association of Transgender Health ("WPATH") recommends SRS for individuals who have been on hormone therapy for twelve consecutive months.   (Doc. 2; Doc. 30-1 at 40-47.)   But the failure to follow WPATH guidelines could, at most, be negligence or gross negligence, which is not a sufficient basis for imposing constitutional liability.   *Hamner*, 937 F.3d at 1177.

Prisoners do not have a constitutional right to be confined in the institutions of their choosing. *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Smith v. McKinney*, 954 F.3d 1075, 1079 (8th 2020). However, prison officials can be liable, under the Eighth Amendment, if they deliberately fail to protect prisoners from a substantial risk of serious harm. *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020); *Blair v. Bowersox*, 929 F.3d 981, 987 (8th Cir. 2019).

The ADC's gender dysphoria policy says the GDMTC is responsible for determining housing assignments, which are made on a "case-by-case basis" based on the inmate's health and safety, security considerations, and the inmate's "own views regarding his or her own safety." (Doc. 31-2 at 2.) Plaintiff wants to be transferred to the McPherson Unit because inmates and guards at the VSM verbally harass her and do not use the correct pronouns. (Doc. 30-1 at 36-39.) While I agree that behavior is offensive, it does not rise to the level of a constitutional violation. *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Kurtz v. City of Shrewsbury,* 245 F.3d 753, 759 (8th Cir. 2001). Plaintiff also said during her deposition that she fears for her safety because she was sexually assaulted by another prisoner. (Doc. 30-1 at 36-39.) However, she admitted the assault occurred at another unit some time ago and that her attacker was transferred. (*Id*.) Although Plaintiff understandably would prefer to be housed with women, nothing in the record suggests she currently faces a substantial risk of harm by being housed in a single-person cell at the VSM.[9] Many prisoners, like Plaintiff, have valid reasons for wanting to be transferred to another unit, such as being close to family members or participating in job and rehabilitation programs that are only available at certain units. But, because the "realities of running a penal

---

[9] During her deposition, Plaintiff explained that even if she was transferred to the McPherson Unit, she would still have to be housed in a single-person cell for the other prisoners' safety because she possess male sex organs. (Doc. 30-1 at 38-40.)

institution are complex and difficult" courts have recognized that, absent a violation of constitutional magnitude, "wide-ranging deference" must be "accorded the decisions of prison administrators" on the daily operations of their facilities. *Jones v. N. Carolina Prisoners' Lab. Union, Inc.,* 433 U.S. 119, 126 (1977).   For these reasons, I conclude Defendants are also entitled to summary judgment on this Eighth Amendment claim.

### D. Three Strikes Provision

Finally, Defendants ask that the Court impose a strike under 28 U.S.C. § 1915(g).[10]   I recommend that request be denied because cases dismissed at summary judgment do not qualify as strikes. *Gard v. Kaemingk,* Case No. 15-3487, 2016 WL 6595966 (8th Cir. Nov. 8, 2016) (unpublished opinion); *Munn v. Martin*, Case No. 12-3580, 2013 WL 1729807 (8th Cir. April 22, 2013) (unpublished opinion). And, the Eighth Circuit has recently held that strikes cannot be imposed at the time of dismissal.   *Gonzalez v. United States,* 23 F.4th 788, 790 (8th Cir. 2022).

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. 30) be GRANTED; Plaintiff's claims against Defendants Griffin, Shipman, Gibson, Parker, Haycox, and Lawrence be DISMISSED with prejudice; and this case be CLOSED.

2. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis*

---

[10] Section 1915(g) provides that: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

appeal from an Order and the accompanying Judgment adopting these recommendations would not be taken in good faith.

DATED this 11th day of April 2022.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE